**RAGSDALE BROTHERS, INC., Appellants,**

**v.**

**Louis MAGRO, Jr., Appellee.**

**No. 04–82–00546–CV.**

Court of Appeals of Texas, San Antonio.

March 27, 1985.

Rehearing Denied May 24, 1985.

Writ filed May 24, 1985.

Jerry A. Gibson, San Antonio, for appellants.

George LaGrand, San Antonio, for appellee.

Before BUTTS, CANTU and DIAL, JJ.

OPINION

CANTU, Justice

Louis Magro, Jr., (Magro) brought a products liability suit against Ragsdale Brothers, Inc. (Ragsdale), the manufacturer of a high performance machine called a "bodymaker," for injuries Magro sustained when performing maintenance on the machine. Trial began July 19, 1982, following which the trial court rendered judgment for Magro upon jury findings. Ragsdale filed a motion for judgment notwithstanding the verdict which was denied. Ragsdale's motion for new trial was overruled and this appeal follows.

Magro filed suit alleging negligence and strict liability based upon among other things Ragsdale's failure to provide adequate warnings and instructions in the use of the machine "bodymaker" which allegedly made the machine defective and unreasonably dangerous. Magro, a foreman for Pearl Container Corporation (Pearl), had at the time of trial been employed there for seven and one-half years. In the course of his employment Magro received training on the bodymaker, read the technical manual supplied and performed extensive service and repair on the machine. He had also cleaned a bodymaker machine approximately once a week for several years.

Cleaning the bodymaker requires the machine to be shut down while in the continuous mode and a plastic window on the machine opened to gain access to the area of operation. Upon opening the plastic window a cut-off switch prevents the machine from operating. This feature was incorporated into the design of the machine as a safety interlock system. The operator can then clean the soiled inner moving parts.

It is, however, necessary for the machine to be operated with the access window open on a limited scale to perform cleaning, aligning and set-up functions. This can be accomplished by stepping away from the machine to the machine's control panel less than two feet away and changing from continuous mode to inch mode. The ma-

chine is then activated and the production chain is inched forward.

On the day of Magro's accident, Calvin Sanders, a co-worker, was cleaning machine number ten and Magro was commencing to clean machine number nine. Magro's arms were slightly extended and his hands were inside the open window of bodymaker number nine removing grease. Unbeknownst to Magro, Sanders walked up to the control panel for machine number nine and changed the machine's mode from continuous to inch mode thus permitting the safety interlock switch to be overridden. Sanders activated the clutch mechanism and started the machine's motor. The machine, now in operation, forced a ram piston down onto Magro's hands causing severe and permanent injuries.

Ragsdale brings forth seventeen points of error. In view of the disposition we make, all of the points are not addressed.

Ragsdale's first eight points of error are essentially directed at the legal and factual basis for the jury's findings on Special Issues one through three.

These complaints are directed to the action of the trial court in overruling Ragsdale's motions for judgment notwithstanding the verdict and for new trial and in rendering judgment for Magro.

A point of error complaining of the rendering of judgment on a verdict because of the state of the evidence presents if anything, only a "no evidence" point. *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.,* 462 S.W.2d 276 (Tex.1970).

But a complaint that the trial court erred in overruling a motion for new trial because the jury's answers are not supported by sufficient evidence amounts to a factual insufficiency point. *Kirby v. Brown,* 383 S.W.2d 184 (Tex.Civ.App.—El Paso 1964, writ dism'd).

The first six points thus fall into categories of legal and factual sufficiency challenges. The seventh and eighth points of error reflect "matter of law" contentions.

■ In reviewing "no evidence" points we look only to the evidence and inferences favorable to the findings of the jury and disregard all evidence and inferences contrary to the findings. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ A review of a factual insufficiency point calls for an examination of the whole record and requires not only some evidence be present to support the jury's finding to a special issue, but also, that the finding, after consideration of the entire record, not be manifestly unjust. *In re King's Estate, supra.*

■ In reviewing "matter of law" points this court must consider all the evidence in the record and if the converse of the finding is established conclusively the point will be sustained. *Precipitair Pollution Control v. Green,* 626 S.W.2d 909, 911 (Tex. Civ.App.—Tyler 1981, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

Special Issues one through three inquired and the jury answered:

### Special Issue No. 1

Do you find from a preponderance of the evidence that at the time the Ragsdale Brothers, Incorporated sold the machine in question Defendant Ragsdale failed to give adequate instructions or warnings for the safe use of the machine?

Answer "We do" or We do not"

Answer: *"We do"*

\*　　\*　　\*　　\*　　\*　　\*

### Special Issue No. 2

Do you find from a preponderance of the evidence that the failure of Ragsdale Brothers, Incorporated to furnish adequate instructions rendered the machine in question unreasonably dangerous?

By the term "unreasonably dangerous" as used in this issue is meant a product that is dangerous to an extent beyond that which would be contem-

plated by the ordinary user of the product with the ordinary knowledge common to the community of such users as to the product's characteristics.

Answer "We do" or We do not"

Answer: *"We do"*

\*　　\*　　\*　　\*　　\*　　\*

### Special Issue No. 3

Do you find from a preponderance of the evidence that such failure was a producing cause of the occurrence in question? By the term "producing cause" as used in this issue is meant an efficient, exciting or contributing cause which, in a natural sequence, produced the injuries or damages complained of, if any. There can be more than one producing cause.

Answer "We do" or "We do not"

Answer: *"We do"*

A review of the record with the jury finding to Special Issue No. 1 in mind reveals that there was little contest regarding the giving of instructions or warnings for the safe use of the machine. Ragsdale's expert witness testified that the location of Magro's hands, while cleaning the machine, was a dangerous area and admitted that the machine failed to have warnings on it. Magro, his co-worker, Calvin Sanders and Magro's expert witness all echoed the statements made by Ragsdale's expert.

The dangers of a high speed industrial bodymaker punching out 135 beverage cans a minute can be easily appreciated. Magro possessed a high degree of familiarity and knowledge regarding the bodymaker which he obtained through training, disassembling, reassembling, repairing and cleaning the bodymaker. He had cleaned the tool pack area on a weekly basis for several years and knew the machine could be activated with the access window open if the machine was in the inch mode, and he had, in fact, operated the machine in such a manner. Moreover, Magro admitted that upon his initial introduction to the bodymaker machine he could foresee another worker activating the machine while it was being serviced resulting in a accident such as the one he experienced. Co-worker Sanders had been employed by Pearl for approximately three years, and had only worked with the bodymaker machines for eighteen months. Sanders received training on the bodymaker for a year before he was classified as an operator and he, too, was aware of the machine's safety features and potential dangers. Magro and Sanders undoubtedly had a high level of knowledge of the bodymaker's operating characteristics.

■ Whether a warning is adequate in view of the user and the circumstances is normally a question for the jury. *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571 (5th Cir.1979); *Pearson v. Hevi-Duty Electric,* 618 S.W.2d 784 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■ Under the facts developed, we cannot say that the jury was in error in finding that Ragsdale failed to give adequate instructions or warnings.

We thus find the evidence legally and factually sufficient to support the jury's finding to Special Issue No. 1. Ragsdale's challenges are overruled.

In response to the jury's finding that the failure to furnish adequate instructions rendered the machine unreasonably dangerous, Ragsdale's primary argument is that the users of the bodymaker were demonstrated to have special expertise and all the knowledge necessary for the safe operation of the bodymaker machine. Ragsdale, therefore, argues it was under no duty to issue any warnings.

■ When a product is manufactured for the purpose of use in the stream of commerce, the original manufacturer, that is, the seller, is under an obligation to market a product free from defects and reasonably safe for use by a consumer or other party who is likely to handle it. This duty of the seller is covered by Restatement of Torts 2d § 402A (1965).[1]

---

**1.** Restatement of Torts 2d § 402A (1965) reads　　in pertinent part:

■ Liability of a seller is not limited to circumstances where the seller markets a product which exposes the consumer, user or someone who comes in contact with it through his occupation to an unreasonable risk of harm. Rather liability of a seller under Section 402A has been extended by the courts to cover non-defective products placed in the flow of commerce without adequate warnings of its dangerous propensity or without adequate instructions for its safe use. *Hamilton v. Motor Coach Industries, Inc.,* 569 S.W.2d 571 (Tex.Civ.App.—Texarkana 1978, no writ).

Liability has also been extended to a seller who places an inherently dangerous product into channels of trade and surrenders possession and control thereof to another, if such seller can anticipate that the product will become unreasonably dangerous if the consumer or user is not warned of such danger. *General Motors Corporation v. Hopkins,* 548 S.W.2d 344 (Tex. 1977), *overruled on other grounds, Duncan v. Cessna Aircraft Corporation,* 665 S.W.2d 414 (Tex.1984); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630 (Tex.1969).

■ A manufacturer's duty to warn of risks inherent in its product is based on the sound policy that the user is entitled to information necessary to make an intelligent choice as to whether the product's utility or benefits justify exposing himself to a risk of harm. *Borel v. Fibreboard Paper Products Corporation,* 493 F.2d 1076, 1089 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Winthrop Laboratories Div. of Sterling Drug, Inc. v. Crocker,* 502 S.W.2d

850, 858 (Tex.Civ.App.—El Paso 1973), *rev'd on other grounds,* 514 S.W.2d 429 (Tex.1974).

■ Implied in the duty to warn is the requirement that the user be unaware or ignorant of the dangers.[2] Thus, it is generally held that no duty to warn exists when the danger or the potentiality of danger is obvious or is actually known to the injured person. *Hagans v. Oliver Machinery Co.,* 576 F.2d 97, 102 (5th Cir.1978); *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 466–67 (5th Cir.1976); *Lopez v. Aro Corporation,* 584 S.W.2d 333, 336 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.) (adequacy of warning cannot be evaluated apart from the knowledge of the user).

Peter Mandel, a ten year employee of Ragsdale as a design engineer testified that the machine in question had been manufactured and sold to Pearl in 1978. Mandel testified that Ragsdale provided optional training as well as engineering drawings and operator's manuals for its machines.

Mandel admitted that no instruction was included informing the operator of the machine that only one person should work on the machine when it was being repaired. He also testified that a safe practice would require the operator performing repairs to turn the machine off at the control panel with the key that was provided and the removal of the key from the control panel.

Magro testified that his knowledge of the machine had been acquired principally through on-the-job training and that he had never received instructions or warnings as to working alone or taking the key out of the machine.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
  (a) the seller is engaged in the business of selling such a product, and
  (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.
(2) The rule stated in Subsection (1) applies although
  (a) the seller has exercised all possible care in the preparation and sale of his product, and

  (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**2.** Restatement of Torts 2d § 402A, comment j, implies the requirement: "In order to prevent the product from becoming unreasonably dangerous, the seller may be required to give directions or warnings, on the container as to its use. The seller may reasonably assume that those with common allergies will be aware of them and he is not required to warn against them."

Judd Clayton, an electrical engineer, testified on behalf of Magro as an expert witness. He examined the owner's manual, the instruction manual and the machine, and concluded that there were no warnings of the risks that were inherently associated with the machine's use. He further testified that no warnings or instructions were present at the operations point of the machine and that the materials supplied by Ragsdale were insufficient as warnings.

Clayton further testified that in his opinion the removal of the power key would have prevented the accident and that an adequate warning would have likely prevented the accident.

In Clayton's opinion, the principal hazard requiring warnings was the danger of machine activation by a second person who might well not be aware of another working on the machine.

The substance of all the expert testimony, including that of Ragsdale's own design engineer, was that the machine was safe only as a one-man operation.

Mandel testified that seven-hundred Ragsdale bodymakers have been distributed and marketed to industry purchasers and to his knowledge there are no reports of an occurrence similar to that experienced by Magro. It is not disputed that the machine performed its intended functions exactly as the operator or users expected.

The term "unreasonably dangerous" was defined for the jury as "... a product that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community of such users as to the product's characteristics."

The record clearly reflects the extent of knowledge Magro and Sanders, as users, possessed. They knew of the safety interlocks, the ability of the machine to operate with the access window open and that the point of operation where the ram is located is a dangerous area. Magro admitted that when the accident occurred he was cleaning the machine in a manner exactly as he had on numerous occasions.

■■■ Under products liability law the lack of adequate warnings will render a product defective or unreasonably dangerous.[3] In *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602 (Tex.1972) the Texas Supreme Court defined a product as unreasonably dangerous or defective when an ordinary man would not have marketed the product without "supplying warnings as to risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers." *Id.* at 605.

Ragsdale contends the product was not defective when it was sold, and that the unforeseeable misuse of the product resulted in Magro's accident. Ragsdale's expert, Mandel, stated that the bodymakers now in operation have not been modified. He steadfastly maintained that the bodymaker was not unreasonably dangerous for its intended use.

■■■ Liability may not be imposed merely because a product involves some risks of harm or is not entirely safe for all uses. Products liability does not mean that a seller is an insurer for all harm resulting from the use of his product. A product is "defective" under the Restatement of Torts 2d only if it is unreasonably dangerous to the ultimate user or consumer. The determination that a product is unreasonably dangerous means that, on balance, the utility of the product does not outweigh the magnitude of the danger. (Citations omitted) *Borel v. Fibreboard Paper Products Corporation, supra* at 1087.

Ragsdale disputes the jury finding that the machine was unreasonably dangerous because, it argues, it was not the intended and foreseeable use of the product, but

---

**3.** Products liability as expressed in § 402A of the Restatement of Torts 2d has been adopted by the Supreme Court of Texas in *McKisson v. Sales Affiliates, Inc.* 416 S.W.2d 787, 789 (Tex. 1967). As used in the Restatement, the term "defective" and "unreasonably dangerous" are synonomous. *Mitchell v. Fruehauf Corporation,* 568 F.2d 1139, 1142 (5th Cir.1978).

instead the deliberate act of a co-worker that was critical in effecting the accident.

In reviewing Ragsdale's no evidence contention challenging the jury finding on unreasonably dangerous we restrict our inquiry to the evidence and reasonable inferences from the evidence in support of the jury finding. *Garza v. Alviar, supra.*

After doing so we must conclude that there is some evidence amounting to more than a scintilla that supports the finding that the failure to provide adequate instructions made the machine unreasonably dangerous.

In reviewing Ragsdale's factual sufficiency challenge to the same jury finding, we consider all of the evidence touching the matter. *In re King's Estate, supra.*

Thus considering the evidence above recited we cannot say that the evidence is insufficient and that the finding is manifestly unjust. Although we might have been persuaded to find otherwise, we may not substitute our findings for those of the fact finder because we might have disagreed.

Ragsdale's legal and factual sufficiency challenges to the jury finding to Special Issue No. 2 are overruled.

Ragsdale next challenges the legal and factual sufficiency of the evidence to support the jury's findings on Special Issue No. 3 inquiring into causation. It disputes Magro's contention that a warning would have prevented the accident and reiterates the user's awareness of the machine's dangers and Sander's actions as the cause of Magro's injuries.

Magro, on the other hand, relies upon Clayton's testimony that the failure to warn was a producing cause of the injuries and that the removal of the start-up key from the machine as well as afixing a warning to the machine would have likely prevented the accident. Magro testified he always followed warnings and instructions in regard to machine operation and certain-ly wished he had had a warning such as offered by Mandel.

Ragsdale argues that a warning would not have prevented Sanders from purposefully activating the machine while Magro was cleaning the tool pack area. Sanders' testimony bears out Ragsdale's argument. Sanders testified that he was at the control panel of the machine, a position less than two feet from Magro and without visual obstruction of Magro's location. Nevertheless Sanders performed a series of necessary steps to activate the machine and when asked why he had operated the machine while Magro was working on it, he replied, "I was not paying attention to him, at all."

The record further reflects that Magro was not performing repair functions on the day of the incident and that Sanders was carrying out those functions. Because of a slow-down in the operation of numerous bodymaker machines, Magro undertook to assist in the clean up operations without informing Sanders that he was doing so.

Texas law places liability on the manufacturer of a defective product if such defect makes the product unreasonably dangerous, and if the defect is a "producing cause" of the injury suffered by plaintiff. *Mitchell v. Fruehauf Corporation,* 568 F.2d 1139, 1142 (5th Cir.1978); *General Motors Corporation v. Hopkins, supra* at 351. The term "producing cause" was defined for the jury as "an efficient, exciting or contributing cause, which, in a natural sequence, produced the ... [occurrence]. There can be more than one producing cause." [4]

In *Blackwell Burner Co., Inc. v. Cerda,* 644 S.W.2d 512 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.) this court held that the failure to place adequate warnings on a pear burner was not a producing cause of Cerda's injuries. Cerda had ten years of experience using pear burners and was aware of the need to inspect the burner. The court held,

**4.** 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC § 70.01 (1982).

If a party to be warned was aware of the potential danger or if the user of a product had knowledge of the danger, the failure of the manufacturer to warn could not be the producing cause of the accident. (Citations omitted)

*Id.* at 516.

■ Moreover, strict liability does not excuse proving that the defect in the product was the cause of the injuries. *Darryl v. Ford Motor Co., supra* at 633; *Pittsburgh Coca-Cola Bottling Works of Pittsburgh v. Ponder,* 443 S.W.2d 546, 548 (Tex. 1969); *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

Magro identifies the defect in the bodymaker as the failure to warn that the machine may be activated by a second person. Dean W. Page Keeton has written numerous articles analyzing the problem of warning and causation.[5] In the words of Dean Keeton, when a product is defective due to inadequate labeling,

The aspect of the defendant's conduct that made the sale of the product unreasonably dangerous [the inadequate instruction or warning] must be found to have contributed to the plaintiff's injury.

Keeton, *Products Liability—Inadequacy of Information,* 48 TEXAS L.REV. 398, 413 (1970).

Dean Keeton goes on to say,

If, however, on the occasion of the damaging event the product was being misused in a way that would have produced the damaging event even if the product had not been defective, then the unreasonably dangerous condition of the product would not be a factual cause of the plaintiff's harm. The sole cause would be the misuse of the product.

*Id.* at 414.

■ We hold that the opinion of Clayton, Magro's expert witness, provides some evidence, more than a scintilla, that the failure to warn was a producing cause of

the occurrence in question. *Garza v. Alviar, supra.*

When we examine the entire record, as we must when addressing a factual sufficiency challenge, we are persuaded that the jury finding is not supported by the necessary quantum of evidence required. We hold that the finding of the jury on Special Issue No. 3 on causation is unsupported by sufficient evidence and is contrary to the great weight and preponderance of the evidence and is manifestly unjust. We sustain Ragsdale's challenge to the factual sufficiency of the evidence in support of Special Issue No. 3.

Although our sustaining of Ragsdale's factual sufficiency challenge calls for a remand we are obliged to dispose of its "matter of law" challenges.

Points of error seven and eight read as follows:

The trial court erred in rendering judgment for plaintiff because as a matter of law, defendant had no duty to warn because the users possessed special expertise in the use of the machine and were fully informed about the operating characteristics of the machine.

The trial court erred in rendering judgment for plaintiff because as a matter of law, the risks to plaintiff was not reasonably foreseeable to the manufacturer.

In determining Ragsdale's matter of law contentions we again consider the entire record. Only if the converse of the jury findings encompassing the contentions are conclusively established will Ragsdale's points be sustained.

Thus, only if Ragsdale has conclusively established that it was under no duty to warn, or that the risk to Magro was not foreseeable to Ragsdale, can Ragsdale prevail under its matter of law challenges.

■ Section 402A of the Restatement of Torts 2d clearly states that, "One who sells any product in a defective condition unreasonably dangerous to the user

---

5. Keeton, *Products Liability—Inadequacy of Information,* 48 TEXAS L.REV. 398 (1970); Keeton, *Private Laws—Torts, Annual Survey of Tex-* *as Law,* 24 SW.L.J. 3, 12 (1970); Keeton, *Products Liability—Problems Pertaining to Proof of Negligence,* 19 SW.L.J. 26, 33–34 (1965).

..." violates the seller's duty. Likewise, one who sells a non-defective, unreasonably dangerous product without adequate warnings violates the seller's duty. The failure to warn is the wrongful conduct which violates the duty owed by seller to the user that imposes liability for the injury done by seller's marketing the product that injured the user. *Hamilton v. Motor Coach Industries, Inc., supra* at 576.

The seller's duty in the context of a marketing defect can be limited where the ultimate users possess special knowledge or expertise concerning the product's dangerous characteristics if the risks are known to them. *Martinez v. Dixie Carriers, Inc., supra; Borel v. Fibreboard Paper Products Corporation, supra; see also, Pearson v. Hevi-Duty Electric, supra. Compare Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975) *with Hagans v. Oliver Machinery Co., supra.*

This opinion has already adequately set out the evidence produced in the trial court evidencing Magro's training and experience with the bodymaker, as well as his knowledge of the machine's safety interlock system and his admitted awareness of the machine's dangerous propensities. Magro claims the no-duty concept is not the law in Texas. While the Texas Supreme Court expressly abolished the "no duty" concept in actions based on negligence in *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978), the doctrine of no duty to warn users of risks actually known or to warn one who knows and appreciates the dangers from a particular product and who has the opportunity to avoid the harm but continues to use the product survives under the assumption of the risk of the use and can bar recovery.[6] *General Motors Corporation v. Hopkins, supra* at 351; *Shamrock Fuel and Oil Sales Co. v. Tunks,* 416 S.W.2d 779, 783 (Tex.1967); *Dixon v. Van*

*Waters & Rogers a Div. of Uinvar,* 674 S.W.2d 479, 483 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

The Restatement of Torts 2d § 402A, comment (j) (1965) provides a presumption that a warning, if given, will be read: "Where warning is given, the seller may reasonably assume that it will be read and heeded."

In the case at bar there was no warning of the type sought by Magro and the presumption works in favor of Magro as user. That is, presumably Magro and Sanders, would have read and heeded a warning.

The presumption may, however, be rebutted if the manufacturer comes forth with contrary evidence that the presumed fact did not exist. *Technical Chemical Co. v. Jacobs, supra; see also Sudduth v. Commonwealth County Mutual Insurance Co.,* 454 S.W.2d 196 (Tex.1970); 1 R. RAY, TEXAS EVIDENCE § 53 (3d ed. 1980).

The manufacturer may overcome the presumption by producing evidence that the user was blind, illiterate, intoxicated at the time of use, irresponsible or lax in judgment or, depending on the circumstances, show that improper use was or would have been made regardless of the warning. *Technical Chemical Co. v. Jacobs, supra* at 606. The circumstances of the accident causing injury to Magro were such that had an adequate warning been provided, presumably Magro would have been alerted to the potential hazard of working in that area, a situation he already recognized. But such a warning would hardly alert him to look over his shoulder for another user who might activate the machine.

Sander's testimony substantially rebuts the presumption that a warning would have been read and heeded to prevent the accident.

---

6. Of course it is questionable whether assumption of the risk itself survives after July 13, 1983. It well may be that the doctrine is now included under the more familiar notion of contributory negligence. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984).

Under *Duncan* and pure comparative apportionment it is unlikely that the doctrine under whatever label, will act as a bar to recovery.

As an employee in an industrial setting, operating a high speed machine, without paying attention to activity nearby, Sanders exhibited laxity in judgment that jeopardized the safety of himself and others.

Additionally, Magro's unilateral decision to inject himself into the cleaning process without notice to others exhibits the same lax judgment attributable to Sanders.

From the evidence before us, the only logical inference is that Sanders would have performed every task necessary to start the machine despite a warning.

Nevertheless, the issue was raised by the parties. It has been held that the necessity to give a warning to a user who possesses expertise in the use of the product is a question of fact for the jury. *Hamilton v. Motor Coach Industries, Inc., supra.*

■ We hold that the question of duty to warn assumed no more than the posture of a disputed factual issue. Ragsdale's matter of law contention on duty to warn is overruled.

■ In a Section 402A action, the violation of the seller's duty is not based on the foreseeability of the risk of harm, but upon tracing the consumer's injury by hindsight back to the seller's placing the product in the stream of trade. Thus one who sells a non-defective unreasonably dangerous product without communicating the dangerousness of the product to the one who is injured by the product is liable for the injuries inflicted by the unreasonably dangerous item. Green, *Strict Liability Under Sections 402A and 402B: A Decade of Litigation*, 54 TEXAS L.REV. 1185, 1219 (1976); *Hamilton v. Motor Coach Industries, Inc., supra.*

The only role in which the concept of foreseeability plays in the Texas law of product liability relates to the foreseeability of use or misuse of the machine. *General Motors Corporation v. Hopkins, supra.*

Under its foreseeability argument Ragsdale asks this court to hold that where the machine contains safeguards to allow safe operation, where the only risk to the user is that of a deliberate, negligent operation by an operator fully familiar with the operation of the machine and where the operator knew or must have known the risk of injury to the user at the time he misused the machine that there is no duty to foresee such an action.

In order to find agreement with Ragsdale's argument the record must disclose that misuse was conclusively established. Misuse, in fact, was a hotly contested issue and formed the basis of a refused special issue request which finds its way into this appeal as a separate point of error.

Ragsdale's expert insisted that the specific misuse of the machine was not foreseeable to the manufacturer. Magro, on the other hand, contended that he could foresee such an accident occurring as a result of the specific acts which transpired. He argues further that the machine was designed as a one operator/user machine and that it was incumbent upon Ragsdale to notify users of this limitation. The evidence supports both positions. Magro demonstrated that the machine was designed for a single operator, that a second user activated the machine and that an injury was sustained. Ragsdale countered with evidence that the machine design incorporated safety interlocks, that the machine performed as intended as expected and that activation by another person was neither intended nor foreseeable.

We are not persuaded that the record supports Ragsdale's matter of law contention on foreseeability. The evidence developed two distinct perspectives, the determination of which belonged to the jury as arbiter of the facts under appropriate instructions.

■ The concept of foreseeability of risk bears significantly on Ragsdale's defense of misuse. An essential element of misuse is demonstration that the defendant-manufacturer neither intended nor could reasonably foresee the particular use (misuse). *General Motors Corporation v. Hopkins, supra* at 351.

As noted above, Ragsdale requested special issues inquiring into the misuse by Magro and Sanders of the product. The issues asked respective percentages of the misuse by the users and the percentage the product proximately contributed to the occurrence in question. The requested inquiries were denied by the trial court.

Ragsdale pleaded misuse as a proximate cause, presented evidence of misuse, requested special issues on misuse and objected to the court's charge refusing submission of the issues. The trial court should have submitted Ragsdale's special issue inquiries into misuse as requested. The pleading and the evidence provided a reasonable basis for minds to differ as to whether there was misuse of the machine which was a concurring proximate cause of the damaging event.

If upon retrial the evidence raises misuse of the product as a concurring proximate cause the trial court no doubt will treat the issue thus raised in terms of contributory negligence as mandated by our Supreme Court in *Duncan v. Cessna Aircraft Co., supra* at 429, provided the predicates of pleading and proof are present.

Ragsdale presents numerous other points of error, most of which we find unnecessary to address in view of the disposition we make of the case and because upon retrial are unlikely to recur. Any asserted error on damages is rendered immaterial in view of our disposition. Other evidentiary error complained of we deem without merit and requires no direct address in this opinion.

There remains, however, one other contention which we feel may once again surface upon retrial and we shall address it.

By its point of error 9 Ragsdale sought the following jury instruction.

There is no duty to warn a group or class of users who possess special knowledge or expertise concerning the dangerous characteristics of a product.

The evidence clearly brought the issue of duty to warn before the jury, but Ragsdale's requested instruction of no duty to warn a group or class of users who possess special knowledge or expertise concerning the dangerous characteristics of a product was denied. Special instructions are authorized only when it is necessary "to enable the jury to properly pass upon and render a verdict on such issue." *DeLeon v. Otis Elevator Co.*, 610 S.W.2d 179, 181 (Tex.Civ. App.—San Antonio 1980, writ ref'd n.r.e.); TEX.R.CIV.P. 277.

Special Issue No. 1 inquired if Ragsdale failed to discharge its duty to warn and Ragsdale's requested instruction sought to inform the jury that the duty does not exist when the users are shown to possess special expertise or knowledge. *Smith v. Borg-Warner Corporation*, 626 F.2d 384 (5th Cir.1980); *Martinez v. Dixie Carriers, supra; see also Nugent v. Utica Cutlery Co.*, 636 S.W.2d 805 (Tex.App.—San Antonio 1982, writ dism'd) ("... duty to warn is evaluated in light of the expected users knowledge or experience."); *Pearson v. Hevi-Duty Electric, supra*, ("... The adequacy of a warning cannot be evaluated apart from the knowledge and expertise of those who may reasonably be expected to use the product."). Appellant submitted an alternative instruction informing the jury of limitations on the duty to warn. This request was also denied.

Only when there is no evidence to support an issue may the court decline to submit a relevant issue. *Garza v. Alviar, supra* at 824; *Clarostat Manufacturing, Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 791 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.) (factual insufficiency to support affirmative answer to opponent's issue is no basis for refusal to submit issue). The evidence unquestionably furnished a reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex. 1974).

The trial court's denial of appellant's requested special instructions may have been within its discretion, *De Leon v. Otis Elevator Co., supra;* however, we

believe the court should have submitted to the jury the special issues inquiring into duty to warn. In view of the holding in *Duncan v. Cessna Aircraft Co., supra,* a jury instruction such as Ragsdale requested will undoubtedly have to be framed in terms of contributory negligence. Appellant's point of error nine is sustained.

The judgment of the trial court is reversed and the cause is remanded.