Rita KOONCE, et al.,
Plaintiffs-Appellees,

v.

QUAKER SAFETY PRODUCTS & MANUFACTURING COMPANY, and Delaware Valley Safeguards Company, Inc., Defendants-Appellants.

No. 84-2749.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1986.

702

Michael L. Dunn, Smead, Anderson & Dunn, Longview, Tex., for defendants-appellants.

Mike A. Hatchell, Tyler, Tex., for E.I. duPont and Angelica Uniform Group.

C. Wayne Dowd, Texarkana, Ark., for National Engineering Co.

Charles Attaway, Texarkana, Tex., for Koonce, et al.

Eric Eisenbraun, Gibson, Dunn & Crutcher, Harold F. Degenhardt, Dallas, Tex., for McGraw Edison Co.

Robert H. Frost, Dallas, Tex., for Automatic Sprinkler Co.

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

George Alvin Koonce was injured in a flash fire that occurred at an ammunitions plant where he was employed. He sustained serious burns, which resulted in his death within a few weeks. His surviving spouse and children filed this wrongful death and survival diversity suit, based on the Texas law of strict liability in tort, against Quaker Safety Products & Manufacturing Corporation (Quaker Safety), the manufacturer of the safety suit worn by Koonce when he was injured, and Delaware Valley Safeguards Company, Inc. (Delaware Valley), the distributor of the suit. These defendants filed third-party complaints against the manufacturers of other safety devices in use at the time of the accident. Prior to trial, the district court dismissed these third-party defendants, however, because they were sued after the applicable statute of limitations had run. At trial, the jury found that Quaker Safety and Delaware Valley had failed to provide adequate warnings and instructions to Koonce regarding the limitations of the protection provided by the suit and that such failure was a producing cause of his injuries and death. The jury apportioned the fault-based causation at five percent for defendants, twenty percent for Koonce, and seventy-five percent for "third parties," the third-party manufacturers which had been previously dismissed. The court entered judgment for plaintiffs for eighty percent of the total damages against Quaker Safety and Delaware Valley jointly and severally.[1] Defendants appeal the judgment, claiming several errors, including the dismissal of the third-party defendants.

---

1. Quaker Safety, as the manufacturer of the safety suit, acknowledges its duty to indemnify Delaware Valley, the distributor. Because Quaker Safety was uninsured and virtually insolvent, Delaware Valley has taken the lead in the defense's litigation of this suit.

### Facts and Proceedings Below

Koonce was employed by Day & Zimmermann, Inc. (Day & Zimmermann), which operated the Lone Star Army Ammunition Plant for the United States Army. The United States government owned the plant, equipment, and materials.[2] On November 27, 1979, Koonce was working in a mixing room located in a bay approximately nine feet deep, with three walls of thick concrete and one wall and a ceiling made of a light plastic "blow out" material. The room housed a mixing bowl, manufactured by third-party defendant National Engineering Company (National Engineering). The bowl was equipped with muller wheels, which mixed ingredients to form a pyrotechnic powder used in ammunition. The mixing room also contained a water deluge system composed of ultraviolet sensors, manufactured by third-party defendant McGraw-Edison Company (McGraw-Edison), which were intended to sense any spark from the materials and activate spray from deluge water nozzles located throughout the room. The deluge water nozzles were manufactured by third-party defendant Automatic Sprinkler Company (Automatic Sprinkler). In addition, Day & Zimmermann's standard operating procedure required Koonce to wear all cotton undergarments, "Nomex" coveralls, and an aluminized safety breakaway suit. The "Nomex" coveralls were supplied by third-party defendants Angelica Uniform Company and Angelica Uniform Group (collectively Angelica), and were made of material manufactured by third-party defendant E.I. duPont de Nemours & Company, Inc. (duPont). The alumunized gloves, headpiece, and safety suit were manufactured by defendant Quaker Safety and distributed through defendant Delaware Valley.[3]

At the time of the accident, Koonce was performing his assigned task of manually scraping down material that had collected around the wheels of the mixing bowl. Apparently, friction from the manual scrape down produced a spark, igniting the pyrotechnic mixture. The fire activated the water deluge system, but not before a large amount of heat had been generated.[4] Koonce received serious burns covering approximately sixty-two percent of his body, which eventually resulted in his death on December 18, 1979. The aluminized safety suit worn by Koonce was a breakaway suit, designed to be pulled off quickly. It was about knee-length, open at the bottom and at the end of the sleeves. The suit also included aluminized gloves. The headpiece had screen-covered openings over the ears for ventilation. The suit was intended to protect the wearer from radiant heat—the heat and flames that radiate directly from a fire. Koonce's injuries and death resulted from convective heat—the oven-like heat that expands to fill up space without radiating directly from the heat source. It appears that convective heat generated by the flash fire entered the suit at its openings, causing Koonce's severe burns.

On October 9, 1981, Rita Koonce, Gerald Alvin Koonce, and Carl Edwin Koonce, the surviving wife and children (all adults) of the deceased, filed this action against Quaker Safety and Delaware Valley. Summons were served upon these defendants on October 15, 1981. Plaintiffs complained that the safety suit was defective in design and lacked proper warnings or instructions regarding its safety limitations. Quaker

**2.** Plaintiffs amended their complaint against Quaker Safety and Delaware Valley on February 16, 1982, to join the United States government as a defendant. Eventually, plaintiffs settled with the government and dismissed it on November 5, 1982. No third-party action against the United States is involved.

**3.** The safety suit worn by Koonce was developed by Thiokol Chemical Corporation for use in the pyrotechnic industry. The suits were manufactured by Quaker Safety and sold through Delaware Valley to Thiokol. During the mid-1960s, Day & Zimmermann began to purchase the safety suits from Delaware Valley. The only two customers for the suit were Thiokol and Day & Zimmermann.

**4.** The evidence suggested that the slight but possibly significant delay in the water deluge may have been caused by the positioning of Koonce's body between the spark in the pyrotechnic mixture and the ultraviolet sensors, which sense sparks in a direct line of vision.

Safety filed its original answer on November 13, 1981, and Delaware Valley answered on November 19, 1981. On February 23, 1983, defendants were permitted to file third-party claims against duPont, Angelica, Automatic Sprinkler, National Engineering, and others.[5] The district court dismissed with prejudice all the third-party actions on October 15, 1984, based on the two-year statute of limitations.[6]

Plaintiffs then tried their case against Quaker Safety and Delaware Valley. The jury found for defendants on the defective design issues, but found that the failure to provide adequate warnings and instructions was a producing cause of Koonce's injuries and death. In answer to a comparative causation issue, the jury allocated causative fault at five percent to defendants, twenty percent to Koonce for his contributory negligence, and seventy-five percent for the "fault" of "third parties." The instructions indicate that "third parties" referred to the manufacturer or suppliers of the other safety devices in use at the time, and the parties have so treated the case on this appeal. The jury awarded $250,000 damages to plaintiff Rita Koonce, but no damages to the estate of the deceased or to either of the children. Plaintiffs filed a motion for partial new trial claiming inadequacy of the damages. The parties then stipulated to inserting in the verdict $100,000 damages for the pain and suffering of the deceased and $25,000 damages for the claims of each child. In addition, the parties previously had stipulated to $16,460 medical expenses and $2,871.85 funeral expenses. The district court then

entered judgment for plaintiffs against Quaker Safety and Delaware Valley, awarding all damages minus the twenty percent attributed to Koonce. The eighty percent of the damages assessed against defendants totaled $335,465.48.

## Discussion

### I. Dismissal of Third-Party Defendants

Defendants Quaker Safety and Delaware Valley argue that the district court erred in dismissing their contribution claims against the third-party defendants. The third-party defendants rely primarily on *Powell v. Charles Offutt Co.*, 576 F.Supp. 272 (E.D. Tex.1983), *aff'd without opinion*, 731 F.2d 886 (5th Cir.1984).

In *Offutt*, the district court decided that under Texas law a defendant is not entitled to contribution or indemnity from third-party defendants who were joined after the statute of limitations had run on the plaintiff's claims against them. 576 F.Supp. at 277. The district court there relied on Texas cases holding that indemnity or contribution, being derivative of the primary plaintiff's cause of action, is not recoverable from a party against whom the injured party has no cause of action. It reasoned that to allow a defendant to recover against a party whom the plaintiff could not sue would "allow the injured plaintiff to circumvent the particular statutory or constitutional bar that precludes a direct right of action." 576 F.Supp. at 274. The defendant in *Offutt* appealed the denial of its contribution and indemnity claims, and a panel of this Court affirmed on summary

5. On September 13, 1982, defendant Delaware Valley filed a motion for leave to serve a complaint upon Thiokol and duPont, which the district court granted on October 21, 1982. Delaware Valley filed a third-party complaint against Thiokol and duPont, but did not serve process upon them. On February 14, 1983, Delaware Valley filed a motion for leave to join third-party defendants Thiokol, duPont, Angelica, Automatic Sprinkler, National Engineering, and Detector Electronics Corporation. Delaware Valley requested leave to withdraw the third-party complaint originally filed against duPont and Thiokol. The district court granted the motion on February 23, 1983, and Delaware Valley filed its third-party complaint and served

process on the above-named third-party defendants. Delaware Valley also requested leave to join McGraw-Edison on July 12, 1983, and was allowed to file that third-party complaint on July 26, 1983. The district court dismissed Thiokol and Detector Electronics without prejudice. No complaint is made of that action.

6. Under Tex.Rev.Civ.Stat.Ann. art. 5526(5) (codified effective September 1, 1985 as section 16.-003(b), Texas Civil Practice and Remedies Code, hereafter "CPRC"), actions for injuries resulting in death must be brought within two years of the death. *See* note 7, *infra.*

calendar. The affirmance was entirely without opinion under our local rule 47.6. 731 F.2d at 886.

■ In the present case, plaintiffs' claims are based on injuries that resulted in death; thus, plaintiffs' actions must have been commenced within two years of the death of the injured party.[7] Koonce died from his severe burns on December 18, 1979. Plaintiffs filed their suit against defendants on October 9, 1981, and summons were served upon both Quaker Safety and Delaware Valley on October 15, 1981. By the first time any action by anyone was commenced against the third-party defendants, namely, with the filing of defendants' third-party complaints in February 1983 (we disregard the October 1982 third-party complaints which were withdrawn without

service having ever been attempted, *see* note 5, *supra*), any cause of action by plaintiffs against the third-party defendants was barred by limitations (*see* note 7, *supra*).

Defendants therefore concede that their third-party actions are barred *if Offutt* correctly decides Texas law on this point. They contend, however, that *Offutt* is not an accurate statement of Texas law.

■ We conclude that *Offutt* does not correctly state Texas law, and that under Texas law a defendant seeking indemnity or contribution from a third-party alleged joint tort-feasor is not barred from relief simply because the plaintiff's cause of action against the third party is barred by a general statute of limitations.[8]

7. Under Texas law, two separate causes of action may arise when injuries wrongfully inflicted result in death. One is the common-law action for damages sustained by the decedent as a result of injuries, which survives to the heirs or legal representatives pursuant to the Texas Survival Statute, Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958) (now section 71.021, CPRC). The other cause of action is conferred upon the surviving spouse, children, and parents of the decedent by the Texas Wrongful Death Act, Tex. Rev.Civ.Stat.Ann. arts. 4671, 4675 (Vernon Supp.1985) (now sections 71.002, 71.003, 71.004, CPRC). It appears that only one statute of limitations applies to these actions for personal injuries resulting in death. This statute, Tex.Rev. Civ.Stat.Ann. art. 5526(5) (now section 16.003(b), CPRC), provides:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
" . . . .
"5. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured."

So far as concerns suits for personal injuries resulting in death, the language of the statute makes no distinction between survival and wrongful death claims. *See Lubawy v. City of McLean,* 355 F.Supp. 1109 (N.D.Tex.1973); *Stiles v. Union Carbide Corp.,* 520 F.Supp. 865 (S.D.Tex.1981). The reference to "injury done to the person of another" should likely not be understood as excluding the deceased's survival claims on the theory that "another" means someone other than the claimant, for the same language is used to establish the two-year limita-

tions period for personal injuries not resulting in death. *See* article 5526(4) ("Action for injury done to the person of another.") (CPRC section 16.003 eliminates the "of another" language in both personal injury contexts; but the CPRC makes no substantive revisions, *id.* § 1.001(a)). If Tex.Rev.Civ.Stat.Ann. art. 5538 (now section 16.062, CPRC) suspended limitations on plaintiffs' survival action (or at least so much thereof as was not recoverable in a wrongful death action) for a period of one year following Koonce's death (no administration having been taken on his estate), limitations on that survival action would have run by not later than December 18, 1982 (or possibly November 27, 1982, it is here immaterial which).

8. We recognize, of course, that one panel of this Court "cannot disregard the precedent set by a prior panel," *Wilson v. Taylor,* 658 F.2d 1021, 1034 (5th Cir.1981), and that this rule is applicable to determinations of state law in diversity cases, *Lee v. Frozen Food Express, Inc.,* 592 F.2d 271, 272 (5th Cir.1979), unless intervening state appellate court decisions reflect that state law is not as announced by the prior panel opinion. *Farnham v. Bristow Helicopters, Inc.,* 776 F.2d 535, 537 (5th Cir.1985). This opinion has been formally circulated to all active judges of this Court prior to its release, calling attention to this panel's proposed departure from the Texas law ruling of the district court in *Offutt* which this Court had affirmed without opinion under our rule 47.6. None of the judges having objected or requested that the case be taken en banc, this panel concludes that it is authorized to depart from *Offutt.*

We observe that although the Texas Supreme Court has adopted a certification rule, by its express terms the rule does not become effective until January 1, 1987.

The leading Texas case on this point is *City of San Antonio v. Talerico*, 98 Tex. 151, 81 S.W. 518 (1904). There, the plaintiff sued the City for personal injuries received when he stepped in a hole in the sidewalk, which he alleged the City had negligently allowed to exist. The City sought to implead and recover judgment over against St. Joseph's Orphan Asylum, which the City alleged had negligently created the hole and the bridge over it by which the hole was hidden from the plaintiff. The plaintiff did not sue the Asylum. The trial court sustained the Asylum's general demurrer to the City's pleading, and dismissed the Asylum from the suit (although overruling its exception raising the two-year statute of limitations on the basis that the pleadings showed the accident occurred more than two years before the City sought to implead the Asylum). The case thereafter went to trial and the plaintiff recovered judgment against the City alone, which appealed, complaining of that recovery and of the disallowance of its suit for indemnity against the Asylum. The court of civil appeals affirmed the judgment in all respects, but did not reach the argument of the Asylum, as an appellee, concerning its limitation defense.

On the City's appeal to the supreme court, the judgment in favor of the plaintiff against the City was affirmed, but the judgment in favor of the Asylum was reversed and the cause was remanded for trial of the City's indemnity action against the Asylum. The supreme court held it was error to sustain the Asylum's general demurrer, because the City had pleaded a good substantive claim for tort indemnity, as it alleged the Asylum was the original and active perpetrator of the wrong for which the City was sought to be held responsible merely by reason of its passive negligence, so that the Asylum was "the party ... primarily liable" and the City would accordingly, if those facts were

proved, be entitled to indemnity from the Asylum for the amount of the plaintiff's recovery from the City. The supreme court then proceeded to consider, and reject, the Asylum's limitation argument:

"St. Joseph's Orphan Asylum, in the Court of Civil Appeals, made a cross-assignment of error upon the overruling of the exception invoking the two-years statute of limitations. The pleadings showed that the injury to plaintiff happened more than two years before the filing of the answer of the city impleading the asylum. The ruling was correct. No limitation against the city ever commenced to run so long as it had no cause of action, and a cause of action could only arise in its favor when it sustained damage from the act of the asylum. According to the strict rules of the common law it could not have brought any other party into this litigation, and could have maintained no independent action, until the suit had terminated by judgment, or it had paid the damages to plaintiff. Hence no limitation would have run against it. Inhabitants of Veazie v. The Penobscot Railroad Co., 49 Me. 119. *It is permitted by our law to bring into the suit against it the party whom it seeks to hold liable as an indemnitor*, in order that protection may be given to it by the same judgment that fixes its liability; *but this does not make the limitation applicable to the cause of action of the plaintiff control its action over against the indemnitor.*" 81 S.W. at 520 (emphasis added).

Third-party defendants seek to distinguish *Talerico* on the basis of the following characterization of it in *Brown & Root, Inc. v. Rust Engineering*, 679 S.W.2d 576, 578 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.):

"In the *Talerico* case, the court held that the strict rules of the common law precluded the City of San Antonio from

After the above-referenced circulation of this opinion, the manuscript opinion of the Texas court of appeals in *Amoco Chemicals Corporation v. Malone Service Company,* 712 S.W.2d 611 (Tex.App.—Houston [1st Dist.1986]), came to the attention of the Court. The *Amoco Chemicals Corporation* case holds that *Offutt* does not correctly state the Texas law with respect to the question here at issue, and follows essentially the same reasoning as does this opinion.

bringing into the lawsuit any other party, or from maintaining an independent lawsuit against another party, until the suit against the city terminated by judgment or until the city paid damages. Under today's procedures Brown & Root was at liberty to claim against and bring into this suit Rust and Salvucci at any time."

With all respect, we believe this is a misreading of *Talerico*. As the emphasized language in our above quotation from *Talerico* reflects, the court there expressly recognized that, under the then Texas practice, the defendant *was* permitted (as he was *not* at common law) to bring the third party into the original suit, *but* held that this did *not* change the rule that limitations did not begin to run on the indemnity claim until the defendant claiming indemnity was subjected to judgment or paid sums in settlement. To the extent that the *Brown & Root* opinion suggests that there is *more* reason for a delayed commencement of limitations on indemnity or contribution claims where joinder is not permitted than where it is, one can agree, but in *Talerico* the Texas Supreme Court, though recognizing the joinder difference, nevertheless expressly refused to be led thereby to a different limitations rule. Moreover, availability of joinder is not a complete answer, for by the time the defendant is served in the plaintiff's suit, limitations may have already run on the plaintiff's cause of action against the third party.[9] And, while we do not base our decision on that ground, we note that the Texas Supreme Court has in certain instances struck down, as violative of the "open courts" provision of the Texas Constitution (art. I § 13), application of limitations statutes that unjustifiably deny a reasonable opportunity to bring

suit. *See, e.g., Neagle v. Nelson,* 685 S.W.2d 11 (Tex.1985).

*Talerico* is, of course, an old decision. But it has never been overruled, and it has been frequently cited with approval on the issue here under consideration. In *Linkenhoger v. American Fidelity & Casualty Co.,* 152 Tex. 534, 260 S.W.2d 884, 886–87 (1953), the Texas Supreme Court noted that limitations did not commence to run until the complaining party suffered legal injury, and then stated:

"A very good illustration of the point is to be found in the case of City of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518, where a plaintiff sued the city for injuries caused by negligence in allowing a hole to remain in the sidewalk. Some two years after plaintiff's injury the city impleaded an abutting property owner claiming that he had negligently dug the hole and asked judgment over and against him for whatever amount the plaintiff recovered against the city. The court held that no limitation against the city ever commenced to run so long as it had no cause of action, and a cause of action could only arise in its favor when it sustained damage from the act of the property owner."

*Talerico* was cited and discussed in almost identical language in *Sims v. Southland Corp.,* 503 S.W.2d 660, 663 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). In *Beaumont Coca Cola Bottling Co. v. Cain,* 628 S.W.2d 99, 100 (Tex.App.—Beaumont 1982, writ ref'd n.r.e.), the court relied on *Talerico* in ruling that an action for contribution was not barred even though filed after limitations had run on any action by the plaintiff against the party from whom contribution was sought.[10] In *Missouri Pacif-*

---

9. This can arise, for example, when the plaintiff's suit is filed and citation is issued the day before limitations runs, and service, though diligently pursued, is not had until weeks later, *see Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1112–15 (5th Cir.1981), or when limitations on the plaintiff's action against the defendant is suspended due to the defendant's absence from the state, but the third-party defendant is not absent. *See* Tex.Rev.Civ.Stat.Ann. art. 5537 (now section 16.063, CPRC).

10. *Cain* involved a September 1978 collision between a vehicle driven by Cain, in which Nelson was a passenger, and a Coca Cola truck. Cain filed suit in February 1979 against Coca Cola for her personal injuries arising from the collision; in March 1980, the petition was amended to add Nelson as an additional plaintiff, Nelson also thereby seeking damages from Coca Cola for her personal injuries in the collision. In February 1981, Coca Cola filed a cross-action against

ic Railroad Co. v. Southern Pacific Co., 430 S.W.2d 900, 904–05 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e), cert. denied, 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969), Liles, a brakeman, was injured in the course of his employment by Southern Pacific in a September 1959 accident brought about by a defective hand brake on the Missouri Pacific freight car being transported by the Southern Pacific train on which Liles was working. By reason of the defective hand brake on the car carried as a part of its train, Southern Pacific was liable to its employee Liles under the Safety Appliance Act, and the three-year limitations period of the Federal Employers' Liability Act applied to Liles' claim against Southern Pacific. However, Liles' claim against Missouri Pacific was one at common law, and was governed by the Texas two-year statute. *Id.* at 904. Liles never brought any suit, but Southern Pacific settled with him in March 1962, and thereafter sued Missouri Pacific for indemnity. The court, expressly relying on *Talerico*, held that Southern Pacific could recover despite the fact that its settlement with Liles and institution of suit against Missouri Pacific each occurred after any cause of action of Liles against Missouri Pacific had become barred by limitations. 430 S.W.2d at 905.

We observe that the above rule is not unique to Texas, but appears to be generally applied in other jurisdictions. *See* 18 Am.Jur.2d *Contribution* § 103; Annot., 57 A.L.R.3d 867.[11]

We recognize that the rule of the *Talerico, Missouri Pacific, Cain,* and similar cases is in tension with a related line of cases holding that tort contribution or indemnity may not be recovered from one who was not liable to the original injured party plaintiff. Generally, these are cases involving some special immunity from liability possessed by the party from whom contribution is sought. *See Patterson v. Tomlinson,* 118 S.W.2d 645, 646 (Tex.Civ. App.—Austin 1938, writ ref'd) (host being immune from suit by guest under guest statute is "not a joint tort-feasor" respecting injury to guest and hence not liable for contribution)[12]; *City of Houston v. Selph,* 356 S.W.2d 850, 851 (Tex.Civ.App.—Houston 1962, no writ) (governmental immunity of municipality; "contribution cannot be recovered in a tort action from a party against whom the injured party had no cause of action"); *City of Houston v. Watson,* 376 S.W.2d 23, 33 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.) (city liable in tort to injured minor child, could recover neither contribution nor indemnity from child's negligent father, since father enjoyed parental immunity from suit by child); *West Texas Utilities Co. v. Renner,* 53 S.W.2d 451, 456 (Tex.Com.App.1932, holdings approved) (employer of injured employee covered by workmen's compensa-

Cain seeking indemnity or contribution from Cain in respect to any sums which might be awarded Nelson on her claim against Coca Cola. The trial court severed Coca Cola's claim for contribution or indemnity against Cain and rendered judgment therein in favor of Cain on the basis that the two-year statute of limitations barred the action for contribution or indemnity since it was filed in February 1981, more than two years after the September 1978 accident, and at a time when any suit by Nelson against Cain would be barred. The court of appeals reversed, holding that limitations did not bar the cross-action, relying on *Talerico.*

The guest statute is not mentioned in *Cain,* but there is no indication that Nelson and Cain were related or related within the required degree. *See* note 12, *infra.*

**11.** This Annotation states, for example:
"The rule generally recognized in most jurisdictions is that the cause of action for con-

tribution or indemnity based upon tort is distinct from the cause of action for the underlying tort, and the time when the statute of limitations starts to run upon such cause of action is not when the tort is committed, but when the underlying claim, a judgment thereon, or a settlement thereof is paid or discharged." *Id.* at 874 (footnotes omitted).

**12.** The guest statute, former Tex.Rev.Civ.Stat. Ann. art. 6701b (repealed effective September 1, 1985, Acts, 69th Leg., ch. 959, § 9(1)), denied to nonpaying automobile passengers "a cause of action" against the owner or operator for injuries sustained in an accident except where intentionally or recklessly caused. In 1973, the statute was amended so that it thereafter only applied when the guest was related to the owner or operator within the second degree.

tion is immune from suit by employee and hence not liable to third party for tort indemnity or contribution); *Grove Manufacturing Co. v. Cardinal Construction Co.,* 534 S.W.2d 153 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (workmen's compensation).[13] In *Varela v. American Petrofina Company of Texas,* 658 S.W.2d 561, 562 (Tex.1983), the Texas Supreme Court, in the course of holding that a negligent third party was not entitled to have the tort recovery of a plaintiff covered by worker's compensation reduced by the percentage of negligence attributed to the plaintiff's employer, cited *Grove Manufacturing Co.* for the rule that "a defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought."

These two lines of authority were considered in a leading early article on the Texas law in this area, Hodges, *Contribution and Indemnity Among Tortfeasors,* 26 Tex.L.R. 150 (1947). Professor Hodges notes the above-discussed rule in workmen's compensation and guest statute cases, and reasons that the public "policy" of those particular statutes is "paramount" over and inconsistent with the more generally based rights of indemnity and contribu-

tion. *Id.* at 169–70. Hodges continues, however, by stating:

"On the other hand, the fact that one of two co-tortfeasors may have a good defense against the plaintiff's action under the Statute of Limitations, does not relieve him from liability for indemnity to one against whom such plaintiff recovered judgment. The cause of action for indemnity did not accrue until judgment was rendered against the one seeking indemnity, and, as this is a distinct cause of action, the statutory period of limitation is reckoned from the time it accrues, not from the time the plaintiff's cause of action arose. Although no Texas case involving the effect of the statute of limitations on the right to contribution has been found, the same reasoning is applicable, for though contribution, like indemnity, may be asserted in plaintiff's original suit before judgment, the cause of action is not complete until judgment has been rendered or payment made for a release." *Id.* at 170 (footnotes omitted).

A related analysis was made in the *Missouri Pacific* opinion. There the court expressly recognized the rule exemplified by

---

**13.** Other cases deal with situations where in a severed or separate suit the injured party has been denied judgment against the party from whom contribution is sought, with contribution consequently denied. In these cases, limitations was not shown to be the basis of the first judgment. *See Brown & Root, Inc. v. Rust Engineering,* 679 S.W.2d at 578 (since basis of first judgment not shown, "we perceive no need to distinguish differences in those cases in which no cause of action ever existed and those cases in which the cause of action was barred by limitations"); *Nacogdoches County v. Fore,* 655 S.W.2d 347 (Tex.App.—Tyler 1983, no writ) (first judgment apparently based on immunity under the police and fire exemption to the Texas Tort Claims Act). It does not clearly appear in these cases that the party claiming contribution did not fail to avail itself of an opportunity to complain (or to be in a position to do so) of the initial judgment exonerating the party from whom contribution was sought.

The foregoing cases stand in some contrast to the statement in Hodges, *Contribution and Indemnity Among Tortfeasors,* 26 Tex.L.R. 150 at 168 (1947):

"Even though plaintiff does not complain of a judgment in favor of one of several defendants, another defendant who has had judgment rendered against him, may complain of the judgment in favor of his co-defendant, so as to secure contribution by reversal of the cause as between defendants, and this would not necessitate a reversal of such judgment as against the plaintiff." (Footnote omitted.)

This passage is supported by the several Texas court of appeals cases cited at 26 Tex.L.R. at 168 n. 91. *See, e.g., Goldstein Hat Mfg. Co. v. Cowen,* 136 S.W.2d 867, 876 (Tex.Civ.App.—Dallas 1939, error dism'd, jdgmt cor.) (trial court rendered judgment in favor of plaintiff Cowen against defendant Goldstein, but denied Cowen any recovery against defendant Tobolowsky; Goldstein alone appealed; the judgment in Cowen's favor against Goldstein was affirmed as was the judgment that plaintiff take nothing against Tobolowsky, but the court of civil appeals awarded Goldstein contribution from Tobolowsky).

such cases as *Renner* and *Selph,* involving workmen's compensation and governmental immunity, but distinguished that character of case:

"In those and other similar situations it has been held that the joint tort feasor is immune from liability to the injured party and is not liable to his joint tort feasor either for indemnity or contribution. Such liability to his joint tort feasor would, by indirection, destroy the protection given him by law. We do not, however, consider the holdings in those cases applicable to this situation. In those cases, the joint tort feasor from whom indemnity or contribution was sought never became liable to the injured party at all. Here Missouri Pacific did become liable to Liles. The running of the statute of limitations did not even extinguish that liability, it merely deprived him of his remedy for enforcing it." 430 S.W.2d at 904–05.

The district court in *Offutt* reasoned that the validity of the foregoing distinction was vitiated by the Texas Supreme Court's decision in *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 553 (Tex.1981), holding that since, by virtue of article 7.12, Texas Business Corporation Act (TBCA), an injured party whose cause of action against the corporation accrued after its dissolution had no cause of action against the former shareholders, the latter could not be liable in indemnity or contribution to co-defendants sued for the same injury. The *Offutt* opinion concluded that *Hunter* rested on the application of TBCA article 7.12 as a statute of limitations which merely eliminated the remedy, not the right. 576 F.Supp. at 277. We disagree, and conclude that such an analysis misreads both *Hunter* and article 7.12.

In *Hunter,* the corporation installed an elevator in a building in 1960 and maintained it until 1964, when the corporation dissolved. In 1975, the plaintiff was injured when the elevator fell on him. He then sued the building owner and the former shareholders of the dissolved corporation, claiming against the latter that the corporation's negligent installation, inspection, and maintenance of the elevator was a proximate cause of its fall. *Hunter* based its rejection of plaintiff's suit against the shareholders, *not* on the ground that the suit was *filed* after the three-year post-dissolution period provided by article 7.12 for filing suits on pre-dissolution rights or claims, but rather on the ground that article 7.12 prevented any claims against former shareholders, and no matter when filed, on causes of action arising after dissolution. The *Hunter* opinion in quoting article 7.12 italicized only that portion of its language showing pre-dissolution claims alone were covered, and was careful to point out that the plaintiff's "cause of action did not accrue until ... after the company dissolved," [14] and that "Article 7.12 provides statutory remedies for pre-dissolution claims only." 620 S.W.2d at 549. With respect to the plaintiff's attempt to invoke the common-law trust fund doctrine, the Texas Supreme Court held that "Article 7.12 expresses a legislative policy to restrict the use of the trust fund theory to pre-dissolution claims...." *Id.* at 551. The court went on to state in this connection:

"If the legislature had intended for shareholders of a dissolved corporation to be liable for causes of action which accrue after dissolution, it could have easily provided so within the statutory language of Article 7.12.... A provision was included to provide creditors with a statutory remedy for pre-dissolution claims. A similar provision could have been included to encompass post-dissolution claims as well. We believe the exclusion of such a provision to be significant. In the absence of such a provision in Article 7.12 or some other statute, we hold Moeller cannot recover from the shareholders for his post-disso-

---

**14.** Interestingly, *Hunter* cited *Sims* for this proposition; as observed earlier in the text, *Sims* relies on *Talerico* in this respect, expressly noting *Talerico*'s holding that the indemnity claim was not barred.

lution negligence claim against Hunter-Hayes." *Id.* at 552 (footnote omitted). Accordingly, by virtue of TBCA article 7.12, the plaintiff in *Hunter never* had a cause of action against the shareholders of the dissolved corporation.

Further, to conclude that *Hunter* overrules or modifies *Talerico* appears inconsistent with *Hunter*'s employment of *Talerico* as the first case cited for its holding that "[n]either contribution nor indemnity" could be recovered from the shareholders. 620 S.W.2d at 553. *See also* note 14, *supra.*

Moreover, we think it plain that even with regard to pre-dissolution claims, TBCA article 7.12 provides the sort of limitations which vitiates the right, not just the remedy. *See State of California v. Copus,* 158 Tex. 196, 309 S.W.2d 227, 231 (1958), *cert. denied,* 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1958); *Jamerson v. Miles,* 421 F.Supp. 107, 111 (N.D.Tex.1976). The three-year period is built into article 7.12 itself, and article 7.12 forms the sole basis for the post-dissolution existence of rights against the former shareholders. In *Hunter,* the court held that "[i]n Texas, recognition of the trust fund theory, as applied to dissolved corporations, did not exist apart from these statutes," referring to the predecessor statutes to article 7.12. 620 S.W.2d at 550. The court went on to state, "[W]e hold Article 7.12 bars resort to the trust fund theory as it exists apart from the statute." *Id.* at 551. The court then cited with approval a holding construing the similar Illinois statute as being one which "controlled both the substantive and procedural rights of the parties." *Id.* In other words, in Texas, rights against shareholders of dissolved corporations are and always have been statutory and they did not and do not exist apart from the statutes, now article 7.12. If there is no right under article 7.12, then there is no right. Article 7.12's three-year period is thus substantive, a part of the right itself.

Perhaps some may find reconciliation of the worker's compensation, guest statute, and similar cases, denying contribution or indemnity, and the *Talerico* line of cases, allowing such recovery, on the basis of a distinction between the existence of a right and the existence of a remedy, as somewhat overly technical or theoretical. There is, however, a more practical and substantial basis for the distinction, similar to that suggested by Professor Hodges as above-noted. In the former type of case, we are dealing with statutes (or occasionally common-law rules) that are designed to apply in a relatively specific, narrow set of circumstances: worker's compensation; "guests" in automobiles; suits against shareholders of dissolved corporations. Protection of the integrity of the public policy which focuses on these specific, relatively narrow types of situations, is properly given precedence, in that special, limited area, over the public policy of the broad rules as to when, in general, causes of action, including those for indemnity and contribution, accrue. *Cf.* Sutherland, *Statutory Construction* § 51.05 (4th ed.). Where, however, we are not dealing with a specific, special policy, but rather with two general policies—such as a general statute of limitations and a general rule as to the accrual of causes of action—there is more room for an accommodation to equity. In this latter situation, the Texas courts have elected to sacrifice some of the policy of the general statutes of limitations to avoid the inequity of cutting off a right of indemnity or contribution before it even accrues.

It seems plain that the motivating force behind the rule of *Talerico, Missouri Pacific, Cain,* and like cases is avoidance of injustice to the party seeking indemnity or contribution. It may, therefore, be objected that there are other, better ways to do this than to, in effect, extend for such a potentially long time the general limitations period applicable to the party from whom indemnity or contribution is sought.

One such possibility is arguably afforded by Tex.Rev.Civ.Stat.Ann. art. 5539c (now CPRC section 16.069), which is set out in

the margin.[15] Texas appellate courts are divided as to whether this statute applies to claims bringing in a third party for contribution or indemnity. *Compare Smith v. Lone Star Cadillac*, 470 S.W.2d 791 (Tex. Civ.App.—Waco 1971, no writ) (applicable) *with Cain*, 628 S.W.2d at 100 (inapplicable). After *Lone Star Cadillac* was decided, the Texas Supreme Court held in *Hobbs Trailers v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85 (Tex.1977), that article 5539c could not be availed of by the party who instituted the suit, even though he was realigned as a defendant, so as to extend the time for his filing a counterclaim against the other party. In *Hobbs*, the court said, "The statute was intended to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitation before asserting his own claim." *Id.* at 88–89.[16] But even were article 5539c applicable, it does not speak to when limitations begins to run on a claim for contribution or indemnity, or any other claim. It only *extends* limitations that would otherwise have run; it does not purport to *bar* claims which would otherwise be viable. The statute was passed in 1969, well after *Talerico* and not long after *Missouri Pacific*, and plainly its major purpose was to allow otherwise barred counterclaims. *See* McElhaney, *Texas Civil Procedure*, 24 S.W.L.J. 179 at 192; *Hobbs*. Since the statute does not speak to accrual of causes of action, we cannot assume that it intended to change the established rule as to when causes of action for indemnity or contribution accrue. And, even if the statute applied, it would also not answer the argument that neither indemnity nor contribution is available because any action against the third party by the original plaintiff, whom *Hobbs* teaches us is not a beneficiary of the statute, is barred. Finally, thirty days after answer may in instances like the present be a very short time to discover the existence of a possible tort-feasor not already a party. This is not to say that some modification of *Talerico* incorporating the concept of *limiting* indemnity or contribution suits by reference to some sufficient period after the underlying suit is commenced, or when limitations would run on an action by the original plaintiff against the third party, whichever is later, might not be desirable. Rather, this does not seem to be what article 5539c does or was designed to do.

It may also be urged that the hardship of a limitations barred contribution claim could be avoided by treating the thus excused third party as one with whom the plaintiff has settled, so that the plaintiff's damages are reduced by the percentage of causative fault attributable to that party under *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), or Tex.Rev.Civ.Stat. Ann. art. 2212a § 2(e) (now section 33.015, CPRC), as might be applicable, and the defendant, whose contribution claim is barred, is thus not harmed.[17] There is

---

**15.** "Sec. 16.069. COUNTERCLAIM OR CROSS CLAIM. (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

"(b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required. (V.A. C.S. Art. 5539c.)"

**16.** The present situation differs from that in *Fluor Engineers & Constructors, Inc. v. Southern Pacific Transportation*, 753 F.2d 444 (5th Cir. 1985), in that there the cross-action was against one who was already a party, having been sued in the original complaint. Thus, that party had at least been brought into the litigation regard-ing the incident in question before limitations had run in its favor.

**17.** Alternatively, such third party's fault could be "ignored"—whether found by the jury or not—with the result that it is in effect borne or shared by the plaintiff (if at fault) and the original defendant in the proportion that their respective percentages of causative fault bear to each other. *See Haney Electric Co. v. Hurst*, 624 S.W.2d 602, 611–13 (Tex.Civ.App.—Dallas 1981, writ dism'd); Sobelsohn, *Comparing Fault*, 60 Ind.L.J. 413 at 454–57 (1985). Such a rule in this case would result in the plaintiffs recovering from the defendants twenty percent (⅖ths) of their total damages. The major difficulty with this rule as a vehicle to afford equitable protection to a defendant whose contribution rights are cut off, is that it is wholly ineffective

much in logic and justice to recommend this. However, it involves such a completely new approach to the problem—in effect overruling *Talerico* and modifying concepts of joint and several liability long applied by Texas courts, albeit mostly in a different context or overall framework—that we think it improper for a federal court to initiate such an approach. The necessity—if justice and practical administration are to be achieved—for integrating many competing doctrines into a workable, consistent whole suggests that such an approach is best undertaken by the legislature or a court which will have the authority and continuing opportunity to deal with the problem in its entirety. Moreover, while neither *Duncan* nor *Varela* are necessarily inconsistent with this kind of approach, nevertheless they do not suggest receptivity to it. Finally, "charging" the plaintiff with the fault of the tort-feasor not "timely" sued presents some problems of its own. The case for such a result—if it is to rest on more than a general objection to joint and several liability, an objection rejected in *Duncan*—is strongest when the plaintiff's suit, omitting the third-party tort-feasor, is filed just before (or after) limitations runs on the plaintiff's action against that third party. The original defendant then—if *Talerico* is not followed—has no practical opportunity (or no even theoretical opportunity) to assert its contribution rights. In such a situation, the plaintiff, who knows of the incident and has the incentive to sue, can generally be faulted for not timely bringing in the culpa-

ble third party. But what of the situation where the plaintiff brings his suit against the original defendant a substantial time, say a year, before limitations runs on the plaintiff's claim against the third party? Who is then at fault for not bringing in that third party before the remaining time expires?

■ While the *Talerico* rule has the regrettable effect of in some instances significantly diluting, as a practical matter, the protection or repose which would otherwise be afforded by the general statutes of limitations, nevertheless the alternatives seem to be either the injustice of unfairly destroying contribution rights in other cases or a more general restructuring of the Texas law in this area the undertaking of which is not appropriate for a federal court exercising diversity jurisdiction. In any event, we conclude that *Talerico* is still the law of Texas, and that *Offutt* was incorrectly decided. It follows that the district court erred in dismissing defendants' third-party contribution or indemnity actions as being barred by the two-year statute of limitations or because plaintiffs' actions against the third parties were so barred. This requires a reversal and remand of so much of the case as consists of defendants' third-party claims.[18] However, a reversal of plaintiffs' judgment against defendants is not required on this ground. Although the third-party defendants were dismissed prior to trial and did not participate in it, defendants were allowed to submit any appropriate proof as to the causative fault of

---

in cases where no fault by the plaintiff was a proximate cause of the accident or injury.

**18.** In its final judgment, following trial, the district court not only confirmed its pre-trial dismissal of defendants' third-party claims against all six third-party defendants—which dismissal was on the pleadings alone and was expressly based on the two-year statute of limitations—but it also provided, "In addition, Summary Judgment is hereby entered for Defendants [we assume third-party defendants is intended] McGraw-Edison and Automatic Sprinkler Company pursuant to F.R.C.P. 56(b)." No reasons are stated or analysis given for this belated rendition of summary judgment in favor of these two third-party defendants, nor can we

tell just what was considered by the district court in this connection. Under the circumstances, we decline to review the correctness of or possible bases for such summary judgment, and the judgment in this respect, so far as it denies defendants relief (on grounds other than limitations) on their third-party actions against McGraw-Edison and Automatic Sprinkler, is remanded to the district court for a statement of the reasons and grounds for its referenced grant of summary judgment. *See Hanson v. Aetna Life & Casualty,* 625 F.2d 573, 575 (5th Cir. 1980). *See also Jot-Em-Down Store (JEDS) Inc. v. Cotter & Co.,* 651 F.2d 245, 247 (5th Cir.1981); *Erco Industries Ltd. v. Seaboard Coast Line Railroad Co.,* 644 F.2d 424, 434 (5th Cir.1981).

these third parties and to have the jury instructed and make findings thereon. Under the circumstances of this case, we hold that the erroneous dismissal, on the grounds of limitations, of defendants' third-party actions does not require reversal of plaintiffs' judgment against defendants.

## II. Defendants' Motion for Directed Verdict

Defendants also challenge the district court's denial of their motion for directed verdict. When reviewing a ruling on a directed verdict motion, we apply the test enunciated in *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). We must consider all the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion. If reasonable and fair-minded persons in the exercise of impartial judgment could reach different conclusions, we must defer to the jury's verdict. *Solis v. Rio Grande City Independent School*, 734 F.2d 243, 247 (5th Cir.1984); *Martin v. Texaco, Inc.*, 726 F.2d 207, 210 (5th Cir.1984).

### (a) Component Part Manufacturer

Defendants claim that the district court should have granted their motion for a directed verdict because the breakaway safety suit was merely a component part of an interrelated safety system. They argue that as manufacturer and distributor of a component part of the final product—the safety system—they cannot be held liable for failure of the final product. Under Texas law, strict liability for component part manufacturers is limited when the component part is integrated into a larger unit before distribution. *Haupt v. Atwood Oceanics, Inc.*, 681 F.2d 1058, 1060 (5th Cir.1982); *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470, 472–73 (Tex.Civ.App. —Texarkana 1981, writ ref'd n.r.e.). If the component part manufacturer does not take part in the design or assembly of the final system or product, he is not liable for defects in the final product if the component part itself is not defective. *Bennett*, 628 S.W.2d at 472–73. We find that de-

fendants have failed to establish that as a matter of law they are exempt from liability as component part manufacturers or suppliers.

Although Koonce relied upon other safety devices while in the mixing room, defendants' safety suit was a product with a discrete function rather than a component part dependent upon integration into a system to facilitate its intended function. Both plaintiffs and defendants presented evidence concerning the suit's specific purpose of protecting the wearer from fire and heat. In fact, there was evidence that Koonce had worn the safety suit while in the mixing room before the installation of the water deluge system.

The component part manufacturer is protected from liability when the defective condition results from the integration of the part into another product and the component part is free from defect. For example, in *Haupt v. Atwood Oceanics, Inc.*, we affirmed a directed verdict for the supplier of a component in a tensioner system because "[a]ny danger posed by these component parts was a function not only of the design and installation of the tensioner system itself, but also a function of the location of the workplaces on the rig." 681 F.2d at 1060. These were elements over which the supplier "had neither responsibility nor control." *Id.; see also Bell Helicopter v. Bradshaw*, 594 S.W.2d 519, 529 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (finding a helicopter tail rotor system, not the individual rotor blade, the "product" for purpose of strict liability action). Moreover, the jury found that defendants' safety suit was defective in that it lacked a warning or instructions regarding its safety limitations. This finding of defectiveness was supported by the evidence. Therefore, even if the suit could be considered merely as a component of an interrelated safety system, defendants' failure to warn renders the component part defective and subjects them to liability. *Bennett*, 628 S.W.2d at 472–73 (supplier of concrete roof sections was not liable for

injuries resulting from defect in roof design, because sections were not defective).

Defendants also presented the safety system theory in the form of the sole cause defense, arguing that failure in the overall system was the sole cause of the harm. The jury was instructed to find for defendants if they found that the way Day & Zimmermann assembled the safety system was the sole cause of Koonce's injuries and death. Viewing the evidence in the light most favorable to plaintiffs, we conclude that reasonable jurors could disagree over whether Day & Zimmermann's actions were the sole cause of the harm. Thus, we defer to the jury's finding that defendants' failure to warn about the limitations of the safety suit was a producing cause of Koonce's injuries and death.

### (b) No Duty to Warn Experts

Quaker Safety and Delaware Valley contend that they had no duty to warn or instruct Koonce about the proper use of the safety suit because he was aware of the dangers involved. Defendants claim that Koonce possessed a special expertise concerning safety in the pyrotechnic industry. Moreover, they assert that Day & Zimmermann was warned of the safety suit's limitations and that this knowledge should be imputed to Koonce. Therefore, the failure to warn or to instruct Koonce about the lack of protection from convective heat cannot be a producing cause of his injuries and death. We reject these arguments, however, because reasonable persons could differ over whether Koonce was or could reasonably be expected to be aware of the safety limitations.

■ The absence of adequate warnings or directions may render a product defective and unreasonably dangerous, even if the product has no manufacturing or design defects. *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330, 338 (5th Cir.1984). The adequacy of the warning must be evaluated in connection with the knowledge and expertise of the user of the product. *Id.; Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 465–66 (5th Cir.1976);

*Ragsdale Brothers, Inc. v. Magro*, 693 S.W.2d 530, 535–36 (Tex.App.—San Antonio 1985, writ granted). Under Texas law, a product supplier has no duty to warn of danger in using the product when the ultimate user possesses special knowledge, sophistication, or expertise; in such cases, the supplier may rely on the professional expertise of the user and tailor its warnings accordingly. *Pavlides*, 727 F.2d at 338–39; *Ragsdale*, 693 S.W.2d at 540.

■ Whether a product supplier must provide a warning or instruction in light of the user's expertise is generally a question for the jury. *Pearson v. Hevi-Duty Electric*, 618 S.W.2d 784, 787 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Hamilton v. Motor Coach Industries, Inc.*, 569 S.W.2d 571, 577 (Tex.Civ.App.—Texarkana 1978, no writ). Defendants presented evidence concerning Koonce's knowledge about the dangers of his job and the company's safety measures. In addition, the court instructed the jury that, if defendants reasonably believed users such as Koonce had the expertise to perceive the dangers involved in the use of the suit, defendants had no duty to warn him. Viewing all the evidence in the light most favorable to defendants' claim that Koonce was aware of the safety limitations, we find that reasonable jurors could disagree about Koonce's knowledge, actual or reasonably expected.

■ Texas law provides a rebuttable presumption that a user of a product would heed warnings or instructions if they were given. *Webb v. Rodgers Machinery Manufacturing Co.*, 750 F.2d 368, 373 (5th Cir. 1985); *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972); *Blackwell Burner Co., Inc. v. Cerda*, 644 S.W.2d 512, 519–20 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). The manufacturer may rebut the presumption by evidence from which it could fairly be concluded that the dangerous use of the product would likely have occurred despite a warning. *Technical Chemical*, 480 S.W.2d at 606. Quaker Safety and Delaware Valley submit that they have presented evidence sufficient to

rebut this presumption; thus, their failure to warn cannot be a producing cause of Koonce's injuries and death. Because Day & Zimmermann's standard operating procedure required Koonce to wear the safety suit while performing the scrape down, defendants have produced sufficient rebuttal evidence to create a jury issue. Nevertheless, they did not establish as a matter of law that Koonce would *not* have heeded a warning. We conclude that reasonable jurors could disagree over the effect a warning would have had on Koonce's actions. Therefore defendants were not entitled to a direct verdict on this basis.

Finally, defendants contend that they provided adequate warnings and instructions to Day & Zimmermann and that this knowledge should be imputed to Koonce. Defendants have not established that they provided any warnings or instructions to Day & Zimmermann. Moreover, in most instances, a manufacturer's duty to warn of dangers involved in using its product "extends to the employee-user as well as the employer-purchaser." *Lopez v. Aro Corp.*, 584 S.W.2d 333, 335 (Tex.Civ.App.— San Antonio 1979, writ ref'd n.r.e.); *see also Pearson*, 618 S.W.2d at 787 (manufacturer required to warn ultimate user or any person likely to handle electrical switch); *Hamilton*, 569 S.W.2d at 576 (manufacturer required to warn those expected to service air cylinder for the buyer); *Restatement (Second) of Torts* § 388, comment a (1965). For example, in *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975), the Texas Supreme Court held that the supplier of defective scaffolding equipment was liable to a plaintiff who fell from the scaffolding, although the plaintiff's employer had erected the scaffolding and was aware of the absence of the cleats that created the defective condition. The court declined to charge the employee, who did not help assemble the scaffolding, with the employer's knowledge of its condition. *Id.* at 800–01.

■ Under some circumstances, a warning to the ultimate user of the product is not feasible. The law, therefore, provides exceptions to the general rule that a product manufacturer must adequately warn the ultimate consumer of dangers associated with its product. *See Khan v. Velsicol Chemical Corporation*, 711 S.W.2d 310 (Tex.App.—Dallas 1986; on rehearing). For instance, Texas law recognizes that a manufacturer of a prescription drug is not obligated to warn the ultimate consumer of the dangers in using the drug, if the prescribing physician receives adequate warnings. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1275–76 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863, 870 (Tex.Civ.App.— Corpus Christi 1973, writ ref'd n.r.e.); *see also Mauldin v. Upjohn Co.*, 697 F.2d 644, 647 (5th Cir.) (applying Louisiana law), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). The duty is satisfied because the physician is expected to act as a "learned intermediary" communicating between the manufacturer and the consumer. *Reyes*, 498 F.2d at 1275–76. The case before us does not compel an exception to the general rule requiring a warning to the ultimate consumer; nor should we create such an exception under the Texas law. It is not impractical or unreasonable to require defendants in this instance to take reasonable steps to warn the wearer of the safety suit about its proper use. *See Khan v. Velsicol Chemical Corporation, supra.* It could be found, for example, that a tag or label attached to the suit would provide a reasonable, practical means to warn. But there was no attempted user warning at all. We reject defendants' claims that they are exonerated by reason of warnings to Day & Zimmermann.

(c) Failure to Prove "Enhanced Injuries"

■ Defendants further assert that the district court erred in denying their motion for directed verdict because the failure to warn of the safety limitations did not cause the fire and did not cause any "enhanced injuries." Defendants attempt to treat this case as a "crashworthiness" case. In crashworthiness cases, "the product defect causes or enhances injuries but does not cause the accident. The conduct which ac-

tually causes the accident, on the other hand, would not cause the same degree of harm if there were no product defect. Rather, it is a combination of factors that causes plaintiff's injuries." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d at 428; *see also Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979). The crashworthiness doctrine does not apply to this case, however, because the case was tried on plaintiffs' claim that defendants' failure to warn Koonce of the safety limitations was a producing cause of his injuries and death, not a cause of the fire.[19] Texas law presumes that a warning would have been read and heeded if given, *Technical Chemical*, 480 S.W.2d at 606. Plaintiffs' theory is not that injuries were enhanced by the product defect, but that they would not have occurred in the absence of the defect. The jury could find that had Koonce been warned he would have received other, adequate protection or would not have performed the tasks in question. The district court did not err in denying the motion for instructed verdict.

### III. Motion for New Trial

▪ Quaker Safety and Delaware Valley contend that the district court abused its discretion in overruling their motion for new trial because the evidence was not sufficient to support the jury's verdict. Appellate review of a district court's action on a motion for new trial is limited to whether the district court abused its broad discretion. *Springborn v. American Commercial Barge Lines, Inc.*, 767 F.2d 89, 97 (5th Cir.1985); *Robin v. Wilson Brothers Drilling*, 719 F.2d 96, 98 (5th Cir.1983). We apply an especially deferential standard in cases when motions for new trial have

been denied. *Dixon v. International Harvester Co.*, 754 F.2d 573, 586 (5th Cir.1985).

▪ Plaintiffs presented extensive evidence demonstrating that Koonce's burns and his death resulted from convective heat that entered the openings in his safety suit. There was evidence from which it could be inferred that other suits were available that could protect the wearer from convective heat. The parties stipulated that defendants did not warn Koonce that the suit did not protect from convective heat. Furthermore, plaintiffs provided sufficient evidence, including expert testimony,[20] to support a finding that defendants' failure to warn of these limitations was a producing cause of the injuries and death. In general, the evidence indicated that Koonce was not aware of the limitations of the protection provided by the suit and that, because he was concerned with his safety, this lack of knowledge affected his conduct. Having reviewed the evidence, we cannot say that it was insufficient to support the jury's verdict or that the district court abused its discretion in overruling the motion for new trial.

### IV. Jury Instructions

On the failure to warn issue, the district court instructed the jury that a product supplier has no duty to warn "where the supplier has reason to believe that those who will use the product such as the deceased Mr. Koonce, will have such expertise as will [enable] him to perceive the danger." Defendants objected to this instruction, requesting one that would have had the jury consider the expertise of Day & Zimmermann, the environment in which the suit was used, and the effect of a warning on Day & Zimmermann's actions.[21]

---

**19.** When instructing the jury as to the damages, the court stated: "If you find for the plaintiff and against the defendants ... you may award such damages you would find resulting from the defective design, if any, or from the failure to provide warnings of dangers and instructions for the safe use, if any."

**20.** Plaintiffs' expert George Greene testified that the openings in the safety suit were a major cause of Koonce's death, that in his opinion the

lack of a warning would lead one such as Koonce to believe he was protected, and that the failure to warn made the safety suit unreasonably dangerous to the user.

**21.** Defendants' requested jury instruction stated: "Therefore, you are instructed that if by virtue of the experience, training and expertise of Day & Zimmerman [*sic*] and George Koonce, you should find from a preponderance of the evidence that there was no re-

In reviewing jury instructions, we do not examine the challenged instruction only, but must consider the whole charge in light of the complaint, the evidence, and the arguments of counsel. *Smith v. Borg-Warner Corp.*, 626 F.2d 384, 386 (5th Cir. 1980). If the jury instructions are "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate." *Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, 511 (5th Cir.1980). Although defendants' requested instruction is similar to one upheld in *Smith v. Borg-Warner Corp.*, 626 F.2d at 388 n. 6, the parties are not entitled to have the jury instructed "in the precise language or form that they suggest." *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 425 (5th Cir. 1985). The district judge "has wide discretion to select his own words and to charge in his own style." *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 262 (5th Cir.1985). The crucial issue on review is whether the jury had an understanding of the issues and its duty to determine those issues. *Id.* at 261–62.

As described in part II(b) above, Texas law does not impose a duty on a product supplier to warn a user who may reasonably be assumed to have knowledge of the dangers involved. A manufacturer may rely on a product user's special expertise or knowledge. *Pavlides v. Galveston*

*Yacht Basin, Inc.*, 727 F.2d 330, 338 (5th Cir.1984). Reviewing the whole charge to the jury, we see no indication that the challenged instruction misled or confused the jury. We find that the district court's instruction adequately presented the relevant law to the jury.

## V. Day & Zimmermann Memo

Before trial, plaintiffs filed a motion *in limine* to exclude evidence of any changes that Day & Zimmermann may have made in its facilities following the accident, which the district court granted. At the close of the trial, defendants objected to the exclusion of an inter-office memorandum written soon after the accident by Day & Zimmermann's general manager. The memo described steps taken by Day & Zimmermann as a result of the accident.[22] On appeal, defendants argue that the district court abused its discretion in excluding the memo.

Plaintiffs sought to exclude the memo based on Rule 407 of the Federal Rules of Evidence,[23] because of defendants' claim that Day & Zimmermann was negligent in its safety operations. Nevertheless, because Day & Zimmermann was not a party to the suit, the memo concerning subsequent repairs should not have been excluded based on Rule 407: "neither the text of rule 407 nor the policy underlying it excludes evidence of subsequent repairs

---

quirement to give them a warning concerning the use of the breakaway flash suit in the particular environment it was being used at the time of the fire in question, or if you should find that the fact that no warning was given would not have changed the manner in which Day & Zimmerman handled the pyrotechnic materials and would not have prevented George Koonce's injury and resulting death, then you will find for the Defendants and against the Plaintiffs' contention on the question of warning under the product's liability theory."

22. These steps included the relocation of the ultraviolet sensors and deluge water nozzles, the elimination of the manual scrape down by operators working on the mixture involved in the accident, and experimentation with a new mixer. Although the memo states that the protective suit worn in the accident was to be reviewed later by "Safety," "Technical," and

"Production," the general manager noted: "[I]t is my opinion protective clothing is not the answer here. However, some improvements can be made."

23. Fed.R.Evid. 407 provides:
   **"Subsequent Remedial Measures**
   When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures *when offered for another purpose, such as proving* ownership, *control,* or feasibility of precautionary measures, if controverted, or impeachment." (Emphasis added.)

made by someone other than the defendant." *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir.1983); *accord Dixon v. International Harvester Co.*, 754 F.2d 573, 583 (5th Cir. 1985).

▮ Although Rule 407 does not dictate the exclusion of the general manager's memo, the district court's action was not an abuse of discretion. In *Grenada Steel,* we upheld the district court's exclusion of a nonparty manufacturer's design changes because the evidence lacked sufficient probative value and could have confused or misled the jury. *Id.* at 889. Similarly, the district court in this case could have been concerned about the prejudicial or misleading effects on the jury of evidence regarding Day & Zimmermann's new safety measures. Defendants contend that the memo was relevant to the issue of Day & Zimmermann's control over the safety system. The court may have concluded that, because the general manager had testified at trial that Day & Zimmermann was responsible for instituting the safety system, his memo was cumulative.

▮ Furthermore, the Day & Zimmermann memo was inadmissible as hearsay evidence. Although part of an Army Board of Inquiry investigation, the memo could be found not to meet the hearsay exception for public records. Rule 803(8)(C) of the Federal Rules of Evidence allows the admission in civil cases of public records or reports, setting forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The Advisory Committee Note discusses the controversy involved in the admission of "evaluative" reports and offers a nonexclusive list of factors to be considered in admitting such reports: (1) the timeliness of the investigation; (2) the experience of the official; (3) whether a hearing was held and the level at which conducted; and (4) possible motivation problems.

In *Smith v. Ithaca Corp.*, 612 F.2d 215 (5th Cir.1980), we noted that the legislative history of the Rule suggests differing interpretations of "factual findings." *Id.* at 221. We further observed:

"[T]he language of Rule 803 suggests that 'factual findings' defines something other than 'opinions' and 'diagnoses' which are admissible under the Rule 803(6) when contained in the records of 'a regularly conducted business activity.' ... Since these terms are used in similar context within the same Rule, it is logical to assume that Congress intended that the terms have different and distinct meanings." *Id.* at 221–22 (citations omitted).

The Day & Zimmermann memo outlines *future* inquiries into the safety measures and offers opinions on *expected* results. The general manager's statements are not characteristic of "factual findings" admissible under Rule 803(8)(C). The report apparently does not involve a hearing or a comprehensive investigation. Because the memo suggests a lack of trustworthiness, the district court did not abuse its discretion in excluding it from evidence. *See Matthews v. Ashland Chemical, Inc.*, 770 F.2d 1303, 1309–10 (5th Cir.1985).

▮ Even if the district court's exclusion of the memo were erroneous, the error would not require reversal unless it affected the substantial rights of a party. Fed. R.Civ.P. 61; *Miles v. M/V Mississippi Queen*, 753 F.2d 1349, 1352 (5th Cir.1985). Defendants offered other evidence of Day & Zimmermann's control over the safety procedures, including the general manager's testimony. Considering the record as a whole, we conclude that the exclusion of the memo did not likely affect the substantial rights of defendants.

## VI. *Plaintiffs' Expert Witness*

Quaker Safety and Delaware Valley claim that the district court abused its discretion in overruling their objection to testimony by plaintiffs' expert witness George Greene. An expert witness is qualified by his "knowledge, skill, experience, training,

or education." Fed.R.Evid. 702. The district court is afforded "the widest possible discretion in deciding whether a witness qualifies as an expert." *Dixon v. International Harvester Co.,* 754 F.2d at 580. The district judge's action "will not be disturbed on appeal unless it is manifestly erroneous." *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir. 1979).

■ George Greene was trained as an engineer and had worked in engineering for more than twenty years. He had specialized in safety engineering and accident reconstruction and had done consulting in that area. In addition, he had investigated fires and explosives in the pyrotechnic and petrochemical industries. The district court did not abuse its discretion in allowing Greene to testify as an expert in light of his experience and training.

*VII. Pre-Judgment Interest*

Plaintiffs have filed a post-argument motion for additional relief, seeking prejudgment interest for damages on their survival action. They rely upon *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), in which the Texas Supreme Court held that a prevailing personal injury plaintiff may recover pre-judgment interest compounded daily, based on a 365–day year, on damages that have accrued by the time of judgment. *Id.* at 554; *see also Crown Central Petroleum Corp. v. National Union Fire Insurance Co.,* 768 F.2d 632 (5th Cir.1985). Thus, plaintiffs claim they are entitled to pre-judgment interest on the damages of $95,465.48 awarded for decedent's conscious pain and suffering, and medical, hospital, burial, and funeral expenses.

■ Although the jury did not award any damages to Koonce's estate, the par-

ties stipulated that Koonce or his estate had incurred ambulance, medical, and hospital expenses of $16,460 and reasonable funeral and burial expenses of $2,871.85. Following plaintiffs' motion for partial new trial concerning the damages, the parties stipulated to insertion in the jury verdict of $100,000 for Koonce's conscious physical pain and mental anguish. Therefore, the district court reduced the total damages incurred by Koonce's estate, $119,331.85, by the twenty percent of liability attributed to Koonce and awarded $95,465.48 for these items. Plaintiffs are entitled to recover this amount pursuant to the Texas Survival Statute, Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958).

Under *Cavnar,* plaintiffs also are entitled to pre-judgment interest on this amount, which shall accrue from Koonce's date of death, December 18, 1979. 696 S.W.2d at 555.[24] A plaintiff is not entitled to pre-judgment interest on damages until those damages actually have been sustained. For example, the decedent's children in *Cavnar* failed to separate their accrued damages from their future damages and thus were not entitled to pre-judgment interest on their claims for loss of companionship, mental suffering, and loss of services. 696 S.W.2d at 556; *see also Monsanto Co. v. Johnson,* 696 S.W.2d 558 (Tex.1985) (widow not entitled to prejudgment interest on wrongful death damages because she failed to separate accrued and future damages). In survival actions, however, "the accrual problem is not critical ... because all of the decedent's damages must necessarily have accrued by the time of death or shortly thereafter." 696 S.W.2d at 555. Plaintiffs here seek prejudgment interest only on those damages awarded under the survival statute, which clearly accrued before the judgment.[25]

---

**24.** The Texas Supreme Court in *Cavnar* decided that in survival actions interest accrues on the decedent's total damages as of the date of death, unless the decedent remained alive for more than six months after the occurrence that gave rise to the cause of action. If the date of death is more than six months after the occurrence, interest accrues from the date six months after the date of the occurrence. 696 S.W.2d at 555.

**25.** As in *Cavnar* and *Monsanto,* plaintiffs here did not segregate their past and future wrongful death damages.

In *Cavnar*, the Texas Supreme Court also held: "Prejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 § 2 (Vernon Supp.1985)." *Id.* at 554 (footnote omitted). This statute, which provides for post-judgment interest, pegs the interest rate to the auction rate for fifty-two-week treasury bills. On January 7, 1985, when the district court entered its final judgment, the prevailing rate under the statute was ten percent.

We therefore grant plaintiffs' motion for additional relief, awarding pre-judgment interest on the $95,465.48 awarded to plaintiffs for their survival action. The pre-judgment interest shall accrue from December 18, 1979, at the rate of ten percent.

### Conclusion

In sum, we take the following action.

The judgment in favor of plaintiffs and against defendants is modified so as to add to plaintiffs' recovery interest on the $95,-465.88 portion of the principal amount of the judgment, which was awarded under the survival statute, from December 18, 1979 to January 7, 1985 at the rate of ten percent per annum. As so modified, the judgment in favor of plaintiffs and against defendants is affirmed. Plaintiffs' suit against defendants is remanded for the entry of a modified judgment in accordance herewith.

With respect to the defendants' third-party actions against the third-party defendants E.I. duPont de Nemours & Company, Inc., Angelica Uniform Group, Angelica Uniform Company, Automatic Sprinkler Company, National Engineering Company, and McGraw-Edison Company, the district court's action in dismissing defendants' said third-party actions on the basis of limitations (or on the basis that limitations barred suit by plaintiffs against those third-party defendants) is reversed; and the district court's action in granting summary judgment in favor of Automatic Sprinkler Company and McGraw-Edison Company on defendants' third-party actions against them on a ground or grounds other than limitations is remanded to the district court for a statement of reasons and grounds, or other further proceedings not inconsistent herewith; and the defendants' third-party actions against the six above-named third-party defendants are remanded for further proceedings consistent herewith.

Accordingly, the judgment below is AFFIRMED in part, MODIFIED in part, and REVERSED and REMANDED in part. The cause is REMANDED for further proceedings not inconsistent herewith.